# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

(1) JUSTIN HOOPER

    Plaintiff/Appellant,

v.

(1) THE CITY OF TULSA

    Defendant/Appellee.

Case No. 21-CV-165-JED-JFJ

### PLAINTIFF'S RESPONSE TO
### DEFENDANT CITY OF TULSA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
### AND BRIEF IN SUPPORT (Dkt# 6)

COMES NOW Plaintiff/Appellant, Justin Hooper, by and through his attorney of record John M. Dunn and responds to *Defendant City of Tulsa's Motion to Dismiss Plaintiff's Complaint and Brief in Support (Dkt#6)*. In support thereof, Plaintiff/Appellant shows the Court as follows:

### INTRODUCTION

With the decision of *McGirt v. Oklahoma,* Case No. 18-9526, 591 US \_\_\_\_ (2020), the United States Supreme Court made it clear that, for more than a century, the State of Oklahoma (through the District Courts and the District Attorneys) and its political subdivisions (through the various cities and towns) have charged, fined and otherwise imposed court costs or administrative fees resulting in large sums of money being taken from Tribal members without the jurisdiction to do so. The *McGirt* opinion, referenced above, determined that the Creek Reservation had never been disestablished. The Oklahoma Court of Criminal Appeals has subsequently found that the Cherokee Reservation has never been disestablished. *Hogner v. State*, 2021 OK CR 4. As a result of this case, it has been found that the State of Oklahoma and

its political sub-divisions are without subject matter jurisdiction to try criminal cases against defendants that are classified as "Indian" under federal law. In this case, Justin Hooper was issued a citation by the City of Tulsa on the Creek Nation. Justin Hooper is a member of the Choctaw Nation, and therefore a member of a federally recognized tribe. Mr. Hooper filed an Application with the Municipal Court for Post-Conviction Relief. The Court denied his application, relying on the Curtis Act, which it believes gives municipalities the jurisdiction to hear cases and to prosecute all inhabitants of the town, including Indians. It is from this ruling that Mr. Hooper appeals and seeks declaratory relief.

## ARGUMENT AND AUTHORITIES

1. **BRIEF STATEMENT OF FACTS**

The facts of this case are not in dispute. On or about August 13, 2018, Plaintiff, a member of the Choctaw Nation, received a speeding ticket within the corporate city limits of the City of Tulsa and within the boundaries of the Muscogee (Creek) Nation. Mr. Hooper was issued a citation and paid the fine of $150.00 on August 28, 2018. On December 17, 2020, Plaintiff filed an Application for Post-Conviction relief in the City of Tulsa Municipal Court seeking to have his conviction vacated on the basis that the City of Tulsa - and specifically the Municipal Court of the City of Tulsa - did not have jurisdiction over him because of his status as an Indian. The Municipal Court heard arguments on April 5, 2021, and by way of written order, denied Plaintiff's application. The matters presented to the Court a very simple: first, this is an appeal of the denial post-conviction relief, which is properly before this Court if the Curtis Act is still good law. In the alternative, the Plaintiff seeks declaratory relief as to what court would have jurisdiction over him because of his Indian status, even if the Curtis Act has not been repealed.

At the conclusion of this brief, the Court should conclude that the Plaintiff has stated a claim upon which relief can be granted and overrule the Defendant's Motion.

## 2. STANDARD OF REVIEW

"All well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The United States Supreme Court has said that the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). But it reiterates the bedrock principle that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief. *Robbins v. Okla. ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1247 (10th Cir. 2008). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991).

As a secondary matter, this case is also an appeal of an adverse ruling of a criminal court. There is simply no authority known to Plaintiff/Appellant that would allow the Court to summarily dismiss an appeal on a criminal matter. The Plaintiff/Appellant would point the Court to the fact that documents required for an appeal ranging from the Notice of Intent to Appeal and Designation of Record to the Docketing Statement and other documents required for initiating a criminal appeal under the Federal Rules of Criminal Procedure have been included with the Complaint. This matter was not filed as a "pure" appeal because there was simply no mechanism

3

found at the District Court that would allow an appeal from a municipal criminal court to federal district court even though the Curtis Act and associated caselaw would tend to suggest that is the proper procedure. Therefore, the Plaintiff/Appellant would contend that the Defendant's efforts to achieve a summary dismissal should fail simply because of the criminal nature of the appeal.

   3. **This Court has jurisdiction over this matter.**

The jurisdiction of this Court is not in dispute. What may be contested is the ***basis*** for the jurisdiction. The Defendant would contend that jurisdiction is proper before this Court as it is an appeal from a municipal conviction that was entered against an Indian for a violation occurring in Indian Country, which is consistent with the requirements of Section 14 of the Curtis Act. Based upon this simple statement, the Defendant contends that Plaintiff has essentially conceded his case by following the procedure set forth in the Act. However, that is simply not the case.

This Court has jurisdiction because the Curtis Act, whether valid or not, is a federal question. The state court would be ineffective at resolving the issue of whether or not the Curtis Act was still enforceable law. Further, even if the Curtis Act were enforceable, counsel believes that this Court can conclude that the Municipal Court of the City of Tulsa still did not have jurisdiction over the Plaintiff; thus, the appeal would be properly filed.

   4. **The City of Tulsa greatly overstates the authority granted by the Curtis Act.**

The Defendant contends that the application of the Curtis Act saves the day for the City. Throughout their motion, the City continually misstates the power granted to it by the Curtis Act. While it is conceded that Section 14 of the Curtis Act allows a municipality to create laws (a legislative function) and to enforce those laws (an executive function), the Curtis Act expressly reserves the judicial function to the courts of the United States. Specifically, the Curtis Act contains the following language:

4

> For the purposes of this section all the laws of said State of Arkansas herein referred to, so far as applicable, are hereby put in force in said Territory; and the **United States court therein** shall have jurisdiction to enforce the same, and to punish any violation thereof, and the city or town councils shall pass such ordinances as may be necessary for the purpose of making the laws extended over them applicable to them and for carrying the same into effect.

The Curtis Act, § 14.

This reservation of jurisdiction has been repeatedly recognized by the federal courts hearing matters related to this issue. *See Colbert v. Fulton*, 1916 OK 315, ¶ 15, 74 Okla. 293, 294, 157 P. 1151, 1152 ("That on and after January 1st, 1898, **the United States courts * * * shall have original and exclusive jurisdiction** and authority to try and determine all civil causes in law and equity thereafter instituted."), *In Re Poff's Guardianship*, the Court of Appeals of the Indian Territory (7 Indian Terr. 59, 103 S.W. 765) ("That Act April 28, 1904, c. 1824, HN4 33 Stat. 573, took from the Indian courts all jurisdiction and conferred it on **the United States courts**.")  The Oklahoma Supreme Court further recognized in the *Colbert* case that it had repeatedly held "The Act of April 28, 1904, was evidently passed for the sole purpose of taking from the tribal courts, their criminal, civil, and probate jurisdiction, and vesting it in **the United States courts of the Indian Territory.**" *Colbert v. Fulton*, 1916 OK 315, ¶¶ 17-18, 74 Okla. 293, 294, 157 P. 1151, 1152, *citing to Washington v. Miller*, 34 Okla. 259, 129 P. 58.  These observations are not relics of history.  As recently as 2017, the Tenth Circuit addressed the Curtis Act in *Murphy*.

> In 1898, Congress imposed new limitations on the powers of tribal governments in the Indian Territory. Under the Curtis Act, tribal courts would be abolished within the year. § 28, 30 Stat. at 504-05. All cases would be transferred to the **United States court in the Indian Territory**, and tribal laws would be unenforceable. §§ 26, 28, 30 Stat. at 504-05. Congress instructed the Secretary of the Interior ("Secretary") to stop directing federal payments to tribal governments and to begin paying individual tribal members directly. § 19, 30 Stat. at 502. The Curtis Act included a default allotment scheme that would take effect following completion of the tribal citizenship rolls and survey of tribal lands. § 11, 30 Stat.

5

>at 497-98. But, as discussed in the next section, Congress and the Creek Nation later agreed to a different allotment plan. The Curtis Act made the most significant governance changes to date, but it did not address the Creek Reservation's borders.

*Murphy v. Royal*, 875 F.3d 896, 941 (10th Cir. Okla. November 8, 2017) (Emphasis Added).

Throughout their motion, the Defendant urges this Court to adhere rigorously to the Curtis Act and what authority that it gives to the municipalities that were organized pursuant to it. The City goes to great pains to point out that there is been no amendment to §14 of the Curtis Act and tracks its history for some time, citing even to the *McGirt* case for the proposition that the Curtis Act is the "clear expression of the intention of Congress" and that the job of this Court would be to ascertain and follow the original meaning of the law before it. When interpreting the Curtis Act, it can be seen that while the laws of Arkansas were essentially transferred to Indian territory, Congress specifically reserved the judicial power to the courts of the United States. It is a long-standing rule that the specific controls the general. Insomuch as Congress specifically reserved that power to the courts of the United States, it cannot be said that the municipalities were granted the authority to create municipal courts by the bulk transfer of Arkansas law to Oklahoma. In applying the interpretation to which the City pays lip service, Plaintiff contends that the Defendant is likely to end up in a position that they have not previously contemplated.

   5. **The Regulatory Scheme Proposed by the City of Tulsa is Counter-intuitive to its status as a political subdivision of the State of Oklahoma.**

The City contends that it has original jurisdiction over an Indian defendant who violated a municipal ordinance pursuant to the authority granted to it under the Curtis Act. The Defendant is implicitly inferring that the Curtis Act is still intact and enforceable law. However, it is inapplicable to the current political landscape and to make such an application would yield an absurd result.

The City contends that its authority to prosecute Indians for crimes committed within its borders derives from the remnants of the Curtis Act, specifically Section 14. However, that would be a power delegated to it by the federal government that was not delegated to the state. Further, it would give municipalities jurisdiction over matters that are outside the scope of the authority granted to the state – the political entity from which the City's authority flows. This construct ignores the fact that a municipal corporation is a political subdivision of the state, not the federal government.

> It appears to be a well-established rule that a municipal corporation is but a political subdivision of the state, exists by virtue of the exercise of the power of the state through its legislative department, and that such municipalities have no power except as delegated by the sovereign. Such corporations being mere creatures of the state, their powers may be enlarged, modified, or diminished by the state without their consent, and the distinction between a municipality as an agent of the state for governmental purposes, and as an organization to administer local needs in a business or proprietary capacity, afford no ground for the application of the contract or due process clauses of the federal Constitution against a state in favor of its own municipalities. This appears to be the rule for the reason such municipalities are always subject to the control of the state. The state may revoke, enlarge, or set aside the acts of its own municipalities. The result of this well-established rule is that the contract in question was modified as to rates by the order of the Corporation Commission, with the consent of the gas company, and such modification is binding on the city. *City of Salem v. Salem Water, Light & Power Company*, 255 F. 295, 166 C.C.A. 465; *City of Trenton v. State of New Jersey*, 262 U.S. 182, 43 S. Ct. 534, 67 L. Ed. 937, 29 A.L.R. 1471; *Pawhuska v. Pawhuska Oil & Gas Co.*, 250 U.S. 394, 39 S. Ct. 526, 63 L. Ed. 1054; *Laramie County v. Albany County*, 92 U.S. 307, 25 L. Ed. 552; *Hunter v. City of Pittsburg*, 207 U.S. 161, 28 S. Ct. 40, 52 L. Ed. 151; *City of Sapulpa v. Okl. Natural Gas Co.*, 258 U.S. 608, 42 S. Ct. 316, 66 L. Ed. 788.

*Tulsa v. Okla. Nat. Gas Co.,* 4 F.2d 399, 403 (E.D. Okla. 1925).

The City contends that through the Enabling Acts and the adoption of the Oklahoma Constitution, the municipalities remained vested with the authority granted to them by the Curtis Act. However, this legal fiction simply does not line up with the current legal landscape. Aside from the fact that the Curtis Act reserves judicial functions to the Courts of the United States and

not to the municipalities, the authority granted to municipal officers no longer exists. For example, the Plaintiff points the Court to the case of *Mo., K. & T. R. Co. v. Phelps*, 4 Indian Terr. 706, 76 S.W. 285 (1903), cited by the Defendant in its motion. This is a case arising from an appeal of a mayoral court in which the mayor of the municipality fills the dual role of "justice of the peace" (an office that has been eliminated by Oklahoma law). Under territorial law, these mayoral courts apparently had the authority to conduct jury trials in both civil and criminal matters and to render verdicts in those matters. The current reality is this authority no longer exists. Municipalities do not have the authority to hear civil cases, nor do they have the authority to grant divorces or to conduct trials for anything but violations of misdemeanor ordinances. This reality flies in the face of Defendant's argument that none of the powers of the municipalities were diminished by the establishment of the State of Oklahoma. Clearly, this is not the reality of the legal political landscape at this time. Whether through practice or modification of law, the municipalities of the state have settled into their position as a political subdivision of the state and not an entity that wields power superior to that of the state.

    **6.  The Municipal Court of the City of Tulsa does not have jurisdiction over Indians.**

The City contends that the Curtis Act is still valid, enforceable law and has never been repealed or modified. It contends in its answer that there is simply no authority that suggests otherwise. That is simply not true. In fact, the City cites (and attempts to distinguish) the case of *Muscogee (Creek) Nation v. Hodel*, 271 U.S. App. D.C. 212, 851 F.2d 1439 (1988). However, of all of the cases cited, *Hodel* is the one that is most on point.

> '[T]he canons of construction applicable in Indian law are rooted in the unique trust relationship between the United States and the Indians.' . . . [S]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." If there is any ambiguity as to the inconsistency and/or the repeal of the Curtis Act, the OIWA *must* be construed in favor of the Indians, i.e., as repealing the Curtis Act and permitting the establishment of Tribal

8

> Courts. The result, then, is that if the OIWA can reasonably be construed as the Tribe would have it construed, it *must* be construed that way.

*Muscogee (Creek) Nation v. Hodel,* 271 U.S. App. D.C. 212, 851 F.2d 1439, 1444-45 (1988) (Internal citations omitted).

The issue of the repeal of the Curtis Act has never been directly addressed by any court other than in *Hodel*. While it is true the City cites a number of cases for the procedural path that cases follow and the framework that was created by the Curtis Act, one case deals with a probate and whether tribal laws or territorial laws would apply, and the second applies to the previously discussed appeal from Municipal Court and civil case. None of these deal with the issue of whether a municipality has jurisdiction over an Indian committing a crime within its borders, which has the duty to prosecute that violation, and most importantly in what court the matter should be heard. According to the authority cited by the Plaintiff, the only courts that would have jurisdiction to hear such a case are the United States District Courts as the successors to the United States Territorial Courts.

If the Curtis Act has been repealed, it cannot be argued that the City, as a political subdivision of the State of Oklahoma, would have no jurisdiction over crimes committed by Indians in Indian Country. The United States Supreme Court has already ruled that (i) if the crimes occurred in Indian Country and (ii) if the Defendant was an "Indian", then the State would have no jurisdiction. This has long been the case. See *Rice v. Olson*, 324 U.S. 786, 789, 65 S. Ct. 989, 991 (1945) (*citing Worcester v. Georgia*, 31 U.S. (6 Pet.) 515 (1832)).

In either event, it seems clear that the Municipal Court of the City of Tulsa does not have jurisdiction to hear the prosecution of Indians for crimes occurring within its borders if the location of the crime is in Indian Country. Regardless of whether the Curtis Act is still viable, it

9

would appear from the bulk of the law on this subject that these matters must be addressed in federal court, not Municipal Court.

### 7. Plaintiff has stated a claim for Declaratory Relief

The Defendant misconstrues the relief sought between Count I and Count II of the Complaint. The Defendant would lead the Court to believe that Plaintiff is asking for two different things or is in some other way being inconsistent. Such is not the case. When Plaintiff initially sought to appeal the Municipal Court's denial of post-conviction relief, it was learned that the federal district court simply had no mechanism for the filing of an appeal from a municipal court, even though the Curtis Act would indicate that the only appeal afforded to the Plaintiff would be to the United States District Court. It is perfectly acceptable for a plaintiff to appeal to a court on the basis the law is incorrect. Because there was no mechanism for an appeal, the Plaintiff additionally seeks declaratory relief in which it seeks to have the Court declare the Curtis Act to be either invalid or to have been repealed through its authority to address federal questions. Either way, the relief sought is the same.

> A declaratory judgment is sustainable only if the court is able to resolve an actual case or controversy rather than providing an advisory opinion. Thus, a plaintiff seeking declaratory judgment must demonstrate that the Court's ruling will settle a dispute that affects the behavior of the particular defendant named in the complaint toward the plaintiff.

*Parga v. Bd. of Cnty. Comm'rs of Tulsa*, No. 18-CV-0298-CVE-JFJ, 2019 U.S. Dist. LEXIS 42510, at *24 (N.D. Okla. Mar. 15, 2019)

The Plaintiff has stated a case about which there is a dispute that affects the behavior of the Defendant, City of Tulsa. At the present time, the City of Tulsa continues to exercise jurisdiction over Indian defendants for violations that occur within its city limits and to prosecute them in its Municipal Court. In each one of these cases, whether the prosecuted party raises the *McGirt* defense or it is raised *sua sponte* by the court, it is summarily denied on the basis the

City believes it has jurisdiction conferred on it by the Curtis Act. Therefore, should this Court grant the relief sought by the Plaintiff in this case, it would modify the behavior of the Defendant and resolve an actual controversy between the Defendant and this Plaintiff, along with countless others that are similarly situated.

## CONCLUSION

The Plaintiff/Appellant in this case has demonstrated to the Court that he has stated a claim upon which relief can be granted. First, he is seeking an appeal from an adverse ruling of the Municipal Court wherein that Court found that it had jurisdiction over him pursuant to the Curtis Act. Second, the Plaintiff/Appellant has stated a claim for declaratory judgment on the basis that the City currently believes that the Curtis Act is valid law and exercises jurisdiction over Indians who commit crimes within its borders pursuant to that Act. The Plaintiff/Appellant contends that the Curtis Act is invalid and has been repealed. This is a federal question and therefore this Court has jurisdiction without being forced to rely on the Curtis Act which the Plaintiff/Appellant contends is not good law.

WHEREFORE, the Plaintiffs pray this Court will overrule the Defendant's Motion and allow this matter to proceed.

Respectfully submitted,

  /S/ John M. Dunn
John M. Dunn, OBA No. 20975
The Law Offices of John M. Dunn, PLLC
616 South Main Street, Suite 206
Tulsa, OK  74119
Telephone: (918) 526-8000
Facsimile: (918) 359-5050
Email: jmdunn@johndunnlaw.com
*Attorney for Plaintiff/Appellant*

**ATTORNEY LIEN CLAIMED**