IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

JUSTIN HOOPER,

    Plaintiff/Appellant,

v.                                           Case No. 21-cv-165-WPJ[1]-JFJ

THE CITY OF TULSA,

    Defendant/Appellee.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [Doc. 6]

THIS MATTER comes before the Court upon Defendant City of Tulsa's Motion to Dismiss Plaintiff's Complaint and Brief in Support ("Motion") (Doc. 6). Having reviewed the parties' submissions and the applicable law, the Court finds that the Motion is well-taken and therefore **GRANTS** it as to Count II (declaratory judgment), which renders Count I (appeal from municipal court judgment) moot.

## BACKGROUND[2]

Plaintiff, as a member of the federally recognized Choctaw Tribe, is an Indian[3] by law. On or about August 13, 2018, he received a speeding ticket from the City of Tulsa within the

---

[1] Chief United States District Judge William P. Johnson of the District of New Mexico was assigned this case as a result of the Tenth Circuit Order designating Judge Johnson to hear and preside over cases in the Northern District of Oklahoma.

[2] Unless the Court notes otherwise, these facts are derived from the Complaint and are to be taken as true for the purposes of ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] The Court recognizes that some individuals find the term "Indian" to be antiquated or offensive to indigenous communities. The term holds legal significance as it refers specifically to members of federally recognized indigenous tribes and was the language Congress used when enacting statutes relevant to this matter. Therefore, other terms such as "First Nations," "indigenous," or "Native

boundaries of the Creek Reservation. On or about August 28, 2018, he was found guilty by Tulsa's municipal criminal court and was ordered to pay a $150 fine, which was paid.

Years later, on or about December 17, 2020, Plaintiff filed an application for postconviction relief in the Municipal Criminal Court of the City of Tulsa. After arguments, the court found that it had jurisdiction pursuant to the Curtis Act, 30 Stat. 495 (1898), and denied postconviction relief. The Municipal Criminal Court found that the appropriate court to which Plaintiff (there Defendant) could appeal his municipal conviction would be the U.S. Federal District Court. Doc. 1-1 at 12. Accordingly, Plaintiff appeals that decision here as Count I. For Count II, Plaintiff seeks a declaratory judgment that municipalities, such as the City of Tulsa, do not have subject matter jurisdiction over "Indians" within the boundaries of a reservation. Plaintiff's case therefore contains both a criminal appeal (Count I) *and* a civil request for declaratory judgment (Count II), an unusual procedural posture. Defendant moves to dismiss the case in its entirety pursuant to Rule 12(b)(6). Doc. 6.

## DISCUSSION

### I.   Procedural Posture

Given the uncommon form this case takes, the Court begins with a logistical question: can it rule on a civil motion to dismiss when Count I is an appeal from Tulsa's municipal *criminal* court?

The parties agree that Count II, as a civil request for declaratory judgment, is appropriately subject to a motion to dismiss under Rule 12(b)(6). *See* Doc. 22 at 7 ("[A] ruling on the City's Motion to Dismiss is proper as to the declaratory judgment aspect of the case."); Doc. 23 at 19–20 ("[I]f the issue of subject matter jurisdiction is taken as a legal issue, the declaratory judgment

---

American" do not convey the precise legal meaning that "Indian" does. The Court uses the term "Indian" for clarity.

could be addressed, but not the appeal from the denial of post-conviction relief."). Further, the parties agree that the Count II declaratory judgment issue might render the Count I appeal moot. *See* Doc. 22 at 7 ("Depending on how this Court rules on the declaratory judgment action, such a ruling could serve to render any further proceedings on the appeal moot."); Doc. 23 at 19 ("[T]he Court's resolution of the Curtis Act issue and the potential retroactive application of the *McGirt* decision will be dispositive of the post-conviction relief since the sole basis for post-conviction relief is that the City is lacking jurisdiction to prosecute him.").

Therefore, mindful of the possibility of overstepping with a different approach, the Court first addresses the declaratory judgment issue in Count II to determine whether reaching Count I is necessary.

## II.     Count II: Declaratory Judgment

Declaratory judgment is appropriate where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1244 (10th Cir. 2008) (citation omitted). Here, Plaintiff seeks declaratory judgment that the Curtis Act does not confer upon municipalities jurisdiction over crimes committed by Indians within the boundaries of a reservation. Plaintiff asserts that because of this lack of subject matter jurisdiction, any such judgment would be void. Doc. 1 at 5–6. This decision could resolve the dispute regarding Defendant's subject matter jurisdiction over Plaintiff's traffic ticket. Doc. 23 at 19. Accordingly, there is a substantial, real, and immediate controversy between the adverse parties here, and declaratory judgment is an appropriate avenue to consider.[4]

---

[4] The parties also dispute the mechanism by which this Court has subject matter jurisdiction to resolve this dispute, although they agree that jurisdiction is proper. *See* Doc. 6 at 3; Doc. 12 at 4. Because the

Defendant moves to dismiss Plaintiff's request for declaratory judgment because, it argues, Plaintiff's legal theory is incorrect. Doc. 6 at 1. Defendant maintains that the Curtis Act remains good law and grants the City of Tulsa municipal authority over everyone within city limits, whether or not that land is part of a reservation. *Id.* at 11. The Court first outlines the relevant provisions of the Curtis Act, then examines the parties' arguments.

A. Relevant Provisions of the Curtis Act

The Curtis Act, 30 Stat. 495, became federal law in 1898. It contained many sections dealing with different issues, largely for the shameful purpose of weakening tribal sovereignty by abolishing tribal courts, *id.* § 28, and enacting an allotment policy that parceled out land to individual tribal members, *id.* § 11. The section of the law at issue in this case, however, is Section Fourteen.

The relevant portions of Section Fourteen deal with Indian Territory state and municipal law and ordinances. On a state law level, this provision copied over Arkansas law to part of what would be Oklahoma, which was not yet a state and was referred to as Indian Territory. *See id.* § 14. Federal district courts had the authority to punish violations of Arkansas state law within Indian Territory because, since the land was not yet a state, there was not a state court to do so. *See id.* On a municipal law level, this provision allowed for incorporation of cities and towns with two hundred or more residents. *Id.* It stated that incorporation would take place "as provided in chapter twenty-nine of Mansfield's Digest of the Statutes of Arkansas"[5] and that once incorporated, the city or town government "shall possess all the powers and exercise all the rights of similar

---

Curtis Act is a federal statute, a dispute about its extent or validity is a federal question. *See* 28 U.S.C. § 1331.

[5] Mansfield's Digest of the Statutes of Arkansas, or Mansfield's Digest, is a publication from 1884 which compiled the statutes of Arkansas. It can be read online at
https://llmc.com/docDisplay5.aspx?set=99989&volume=1884&part=001.

municipalities in said State of Arkansas." *Id.* Additionally, Section Fourteen granted city or town councils the authority to pass ordinances and gave the mayors of such towns "the same jurisdiction in all civil and criminal cases arising within the corporate limits of such cities and towns as, and coextensive with, United States Commissioners in the Indian Territory[.]" *Id.* And most importantly, the law provided that "all inhabitants of such cities and towns, without regard to race, shall be subject to all laws and ordinances of such city or town governments, and shall have equal rights, privileges, and protections therein." *Id.*

Plaintiff makes a variety of arguments about how to interpret this language. First, he asserts that Section Fourteen grants only legislative and executive powers to municipalities while reserving judicial powers to the federal district court. Doc. 12 at 4–5.[6] He goes so far as to contend that the Curtis Act does not permit municipalities to create municipal courts. *Id.* at 6. This stance is patently incorrect; the same section of the Curtis Act recognizes mayoral civil and criminal jurisdiction "coextensive with[] United States Commissioners in the Indian Territory." Curtis Act § 14. The Curtis Act therefore explicitly recognizes mayoral courts. *Id.* Additionally, the language of Section Fourteen governs incorporation based on the provisions of Mansfield's Digest, chapter twenty-nine. Section 765 of this chapter provides:

> By-laws and ordinances of municipal corporations may be enforced by the imposition of fines, forfeitures, and penalties, on any person offending against or violating such by-laws or ordinances, or any of them; and the fine, penalty, or forfeiture, may be prescribed in each particular by-law or ordinance, or by a general by-law or ordinance made for that purpose; and municipal corporations shall have power to provide in like manner for the prosecution, recovery and collection of such fines, penalties and forfeitures.

---

[6] Plaintiff cites to two cases describing how the Act of April 28, 1904 stripped tribal courts of jurisdiction and vested that jurisdiction in the United States courts of the Indian Territory. Doc. 12 at 5. These cases do not stand for the proposition that federal courts had sole jurisdiction over all matters, including municipal matters, in the Territory. They refer only to the divestment of *tribal* judicial authority. *See Colbert v. Fulton*, 157 P. 1151, 1152 (Okla. 1916); *In re Poff's Guardianship*, 103 S.W. 765, 766 (Ct. App. Indian Terr. 1907).

5

Mansfield's Digest, ch. 29, § 765 (1884). Additionally, the same chapter grants jurisdiction to "police courts" reminiscent of the municipal court at issue in this case: "The police judge shall provide over the police court, and perform the duties of judge thereof, and shall have jurisdiction over all cases of misdemeanor arising under this act, and all ordinances passed by the city council in pursuance thereof." *Id.* § 812. These sections together make it quite clear that the Curtis Act, which incorporates the provisions of Mansfield's Digest by reference, explicitly authorizes the jurisdiction of a variety of municipal courts and court functions.

Plaintiff shifts to a more technical approach on this point in his supplemental brief, claiming that municipal judges—not mayors—exercise municipal jurisdiction today. Doc. 23 at 16–17. It is true that mayoral courts did not survive Indian Territory's conversion to statehood as Oklahoma. *Hillis v. Addle*, 128 P. 702, 702 (Okla. 1912). Therefore, the mayoral courts to which the Curtis Act refers are no longer in existence. However, as described above, the provisions of Mansfield's Digest incorporated by reference into the Curtis Act expressly authorize other forms of municipal jurisdiction, including the jurisdiction to enforce municipal ordinances and misdemeanors.

Plaintiff also argues that the language "all inhabitants of such cities and towns, without regard to race, shall be subject to all laws and ordinances of such city or town governments" fails to consider the difference between race (indigenous heritage) and the political status of being an Indian (membership in a federally recognized tribe). Doc. 23 at 18. This argument loses sight of the forest for the trees. The statutory language plainly covers *all inhabitants*. It clarifies, during an era of history in which "all" often made racial exclusions,[7] that this statement covered individuals of all racial backgrounds. But this clarification supplements "all," not restricts it. Plaintiff's

---

[7] See, famously, the Declaration of Independence's "all men are created equal" penned while slavery remained legal.

6

argument could just as easily be used to say that "without regard to race" does not cover other interpersonal differences, such as sex, and therefore that "all" did not include women, whom the Curtis Act had already separated from the rest of the political citizenry by forbidding them to vote. Curtis Act § 14. Even if "without regard to race" does not cover the political difference of whether a person is legally an Indian, or a woman, or a member of any other group treated differently under the law based on a trait other than race, that does not diminish the coverage of the phrase "all inhabitants." The plain meaning of this phrase is to cover *everyone* inhabiting the city or town.

Oklahoma's statehood did not put an end to municipalities' powers under the Curtis Act. The Oklahoma Constitution provided that "[e]very municipal corporation now existing within this State shall continue with all of its present rights and powers until otherwise provided by law, and shall always have the additional rights and powers conferred by the Constitution." Okla. Const. Art. 18 § 2. In fact, the Oklahoma Constitution explicitly permitted the operation of municipal courts. Article 7, § 1 stated,[8]

> The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law.

*Ex parte Bochmann*, 201 P. 537, 539 (Okla. Ct. Crim. App. 1921). Therefore, statehood did not terminate the continued power of municipalities to operate municipal courts.

Plaintiff also argues that the Curtis Act has been repealed by *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439 (D.C. Cir. 1988). This case did not involve Section Fourteen of the Curtis Act; it addressed Section Twenty-Eight of the Curtis Act, which pertained to the abolition of tribal courts. *Hodel*, 851 F.2d at 1440, 1442–43. Accordingly, *Hodel* did not repeal Section Fourteen.

B. State and Municipal Authority

---

[8] This provision has since been amended.

Pursuant to the Major Crimes Act ("MCA"), 18 U.S.C. § 1153, state courts do not have jurisdiction over major crimes committed by Indians in "Indian country," which includes reservation lands. Federal courts have exclusive jurisdiction over these crimes, which include offenses such as murder, arson, and assault. *Id.* Plaintiff argues that a regulatory scheme that would grant the City of Tulsa, but not the state of Oklahoma, criminal authority over an Indian defendant does not make sense because municipalities are political subdivisions of the state. Doc. 12 at 6. Defendant counters, correctly, that "a municipality may be granted powers by the federal government different than those granted to the state." Doc. 13 at 6 (emphasis removed).

Defendant cites *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958). In this case, the City of Tacoma sought to build a power project on a river that ran through it. It received a federal license to do so. The State of Washington opposed the project and the license because it would destroy one of the state's fishing hatcheries. Although Tacoma was a political subdivision of Washington, the federal government has authority over navigable waters and it used that authority to issue a license to Tacoma—so, the Supreme Court held, Tacoma could use the license and build the project even though the state opposed it. *Id.* at 339.

The circumstances here are analogous. Congress has plenary power over Indian affairs, *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 343 (1998), just like it does over navigable waters. Although this case does not involve a license, the same principle applies—Congress affirmatively granted authority to a municipality that it did not give to the state. Even if the mechanism by which the city receives power is different (a license vs. a statutory act), the basic holding that cities can hold powers separate from and contradictory to the wishes of the state is sufficient.

C. *McGirt* and the Curtis Act

8

When the United States Supreme Court ruled on *McGirt v. Oklahoma*, 591 U.S. ___, 140 S. Ct. 2452 (2020), the decision had a tremendous impact on the state of Oklahoma. *McGirt* examined whether the Creek reservation covering much of the eastern half of Oklahoma had been disestablished: taken out of political existence by an act of Congress. *Id.* at 1, 7. It found that the reservation was still intact, and thus, the area in which the petitioner had committed his crime was, and is, "Indian country" under the MCA. *See id.* at 27–29. Accordingly, the State of Oklahoma had no jurisdiction over the petitioner because the federal government had exclusive jurisdiction over his major crime. *See id.* at 36.

Plaintiff contends that because of *McGirt's* holding, "the state of Oklahoma and its political sub-divisions are without subject matter jurisdiction to try criminal cases against defendants that are classified as 'Indian' under federal law" and that because of this, the municipal court lacked subject matter jurisdiction over his conviction. Doc. 12 at 1–2. This characterization of *McGirt's* holding is incorrect. *McGirt* makes no mention of municipal jurisdiction and only briefly mentions the Curtis Act in the dissent. 140 S. Ct. at 2490 (Roberts, C.J., dissenting). This mention is made in the context of Congress "laying the foundation for the state governance that was to come," i.e., that the Curtis Act was an indication of Congress's intent to disestablish the reservation in the future. *Id.* at 2491. *McGirt* says nothing about repealing or overriding the Curtis Act, and it does not deal with municipal law at all. Its holding is that the Creek reservation is still intact, which has implications for felony crimes within the scope of the MCA.

In contrast, Congress passed the Curtis Act to, among other things, give municipalities jurisdiction over local ordinance violations—a classification of crimes entirely distinct from the MCA's litany of serious offenses. *See* 18 U.S.C. § 1153 (MCA). Plenty of other criminal violations also do not trigger the MCA's jurisdiction; for example, it is not federal courts but tribal courts

that have jurisdiction over misdemeanors that Indians commit within reservation boundaries. *See United States v. Lara*, 541 U.S. 193, 199 (2004). It is not contradictory that Congress granted federal jurisdiction over major crimes through the MCA and municipal jurisdiction over violations of local ordinances through the Curtis Act. *McGirt's* implications for the former do not demonstrate an effect on the latter.

D. <u>Conclusion</u>

Plaintiff requested declaratory judgment "finding that the Curtis Act confers no jurisdiction to municipalities located within the boundaries of a reservation and any judgment rendered by such municipalities against an Indian would have been made without subject matter jurisdiction and is therefore void." Doc. 1-1 at 5–6. Defendant moves to dismiss this request. Doc. 6. The Court **GRANTS** the motion to dismiss this request for declaratory judgment and finds for the above reasons that the Curtis Act grants the municipalities in its scope jurisdiction over violations of municipal ordinances by any inhabitant of those municipalities, including Indians.

Accordingly, Plaintiff's appeal of the decision denying postconviction relief for his speeding ticket fine (Count I of the Complaint) is **MOOT**.

**IT IS SO ORDERED.**

_____
WILLIAM P JOHNSON
UNITED STATES DISTRICT JUDGE